SUMNER (WHEELER v.). See Case No. 17,-501.

SUMNER, The W. A. See Case No. 4,288.

## Case No. 13,612.

### The SUN.

[1 Biss. 373; [1] 1 Am. Law Reg. (N. S.) 277; 4 West. Law Month. 75: 9 Pittsb. Leg. J. 308.]

District Court, D. Wisconsin. Dec. Term, 1861.

SHIPPING—PUBLIC REGULATIONS—PLEADING—ANSWER.

1. A vessel propelled in whole or in part by steam is not liable to a penalty for transporting goods, wares, and merchandise, without inspection of the hull and boilers under the act of congress of August 30, 1852 (10 Stat. 61). The penalty is alone for transporting passengers.

2. Answer to a libel of information must be full and explicit to each article. It must deny the charges, or confess and avoid them by proper averments of facts.

In admiralty.

J. B. D. Cogswell. U. S. Dist. Atty., for the United States.

W. P. Lynde, for respondent.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

MILLER, District Judge. By the information this propeller was seized by the collector at the port of Milwaukee, on the 6th of October, 1861, for the following causes:

1st. That on the 20th of September, 1861, the propeller did transport goods and passengers from Milwaukee to Goderich, in Canada, without first having complied with an act of congress, approved July 7, 1838 (5 Stat. 304), entitled "An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam," and the act of August 30, 1852 (10 Stat. 61), entitled "An act to amend an act," &c., in this, that the hull of said propeller had not been inspected pursuant to the provisions of the ninth section of the last act within one year prior to the 20th of September, 1861. For each of said violations a penalty of five hundred dollars is claimed.

2nd. That on the 28th of September, 1861, the vessel did transport goods and passengers from the port of Goderich to the port of Milwaukee, without inspection of her boilers, and for each violation of the act a penalty of five hundred dollars is claimed.

Respondent answers that the vessel was licensed at Buffalo, and was employed in the business of commerce and navigation between the ports of Chicago and Milwaukee, on Lake Michigan, and the port of Goderich, in Canada. That the hull and boilers of the vessel were inspected at the port of Chicago, and certificate issued on the 19th of September, 1860, and on the 8th of September, 1861, before the certificate had expired, respondent caused an application to be made to the inspectors at Chicago, for the inspection of the hull and boilers of the propeller; and on the 28th of the same month a second application was made.

At the time of the first application the inspectors were absent from Chicago, and at the time of making the second application the inspectors had not the pumps and necessary machinery for making the inspection. and one of the inspectors was then absent. The propeller was inspected at Chicago, on the 8th of October following, when a certificate was issued by the inspectors; and there are no local inspectors on Lakes Huron and Michigan.

To the answer, the district attorney filed exceptions: that respondent has not fully and distinctly answered the libel, and the matters set forth are immaterial and irrelevant. Before considering the exceptions. it may be proper to inquire what the respondent should answer to. The libel is intended to charge that the propeller is liable to a penalty of five hundred dollars, for carrying goods, &c., and a like penalty for carrying passengers from Milwaukee to Goderich, and similar penalties for carrying goods and passengers from Goderich to Milwaukee, without having been first inspected. as required by the acts of July 7, 1838. and August 30, 1852.

The act of July 7, 1838 (5 Stat. 304). enti-

tled "An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam," directs in section 2: "That it shall not be lawful for the owner, master, or captain of any steamboat, or vessel propelled in whole or in part by steam, to transport any goods, wares, or merchandise, or passengers, in or upon the bays, lakes, rivers, or other navigable waters of the United States, without having first obtained from the proper officer a license under the existing laws, and without having complied with the conditions imposed by this act; and for each and every violation of this section the owners of said vessel shall forfeit and pay to the United States the sum of five hundred dollars, the one half to the use of the informer, and for which sum or sums the steamboat or vessel so engaged shall be liable, and may be seized and proceeded against summarily, by way of libel, in any district court of the United States, having jurisdiction of the offence." The act then directs the appointment and duties of inspectors of hulls and boilers of such boats and vessels.

The act approved August 30, 1852, is an act to amend the act of July, 1838. The first section directs: "That no license, register, or enrollment under the provisions of this or the act to which this is an amendment shall be granted, or other papers issued by any collector to any vessel propelled in whole or in part by steam, and carrying passengers, until he shall have satisfactory evidence that all the provisions of this act have been fully complied with; and if any such vessel shall be navigated, with passengers on board, without complying with the terms of this act, the owners thereof and the vessel itself shall be subject to the penalties contained in the second section of the act to which this is an amendment." The whole object and scope of the last act was to provide for the better security of the lives of passengers, and it provides a full and perfect system for the inspection of the hulls and boilers of vessels propelled in whole or in part by steam, and carrying passengers. By the section of the act above quoted, the penalty prescribed in the second section of the act of July, 1838, is continued as to vessels navigated, with passengers on board, without complying with the terms of the act in regard to inspection. The penalty in the act of July, 1838, for transporting goods, wares, and merchandise on vessels not inspected, is not embraced in the act of August, 1852; and by this last act all parts of laws heretofore passed, which are suspended by, or inconsistent with the act, are repealed. That provision in the act of July, 1838, was outside of the object of the act, and in the subsequent act it is entirely omitted. In this respect the two acts are inconsistent, and the provision of the last act must prevail. This is a penal statute, and it must be construed literally. The respondent is not required to answer that part of the libel of information claiming a penalty for transporting, on this propeller, goods, wares, or merchandise, without previous inspection of her hull and boilers.

The exceptions to the answer will have to be allowed, with leave to amend. The answer neither denies nor confesses the charges. The respondent must fully and explicitly answer the several articles of the libel. He must deny the several articles, or confess and avoid them by a proper allegation of facts.

[3] [By the answer, the propeller was licensed at the port of Buffalo Creek, on the 5th of April, 1861. There is no allegation that since then she has been transferred to any other port. It is also alleged that her hull and boilers were inspected at the port of Chicago on the 19th of September, 1860, and that, before the certificate expired, and again on the 28th of September, 1861, application was made to the inspectors at Chicago for inspection, which was not done for the reasons stated. It is not alleged that the application was in writing, as the law requires, nor does it appear that the inspectors at Chicago had any official right to perform the duty. By section 9 of the act of August, 1852, inspectors were directed to be appointed at Buffalo, which was the port where this propeller belonged. The inspectors are to perform the services required of them by the act, within the respective districts for which they shall be appointed; and, by the twelfth specification of the section, the board, when thereto requested, shall inspect steamers belonging to districts where no such board is established. If this propeller belongs at the port of Buffalo Creek, it is questionable whether a certificate of inspection at the port of Chicago should be adjudged a compliance with the law. But this subject can be more maturely examined hereafter.] [3]